UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
―――――――――――――――――――――――――――――

PLAYWELL TOY, INC., and
KMART CORPORATION,

                              Plaintiff,

              -vs-                                    03-CV-0704C(SC)

BUREAU VERITAS CONSUMER PRODUCTS
SERVICES, INC., (F/K/A ACTS TESTING LABS, INC.),
and BUREAU VERITAS CONSUMER PRODUCTS
SERVICES (HONG KONG) LTD. (F/K/A ACTS TESTING
LABS (H.K.) LTD.),

                              Defendants.

―――――――――――――――――――――――――――――

APPEARANCES:   DAMON & MOREY LLP (SHERI L. MOONEY, ESQ., Of Counsel),
               Buffalo, New York for Plaintiffs.

               THELEN REID & PRIEST, LLP (PAUL M. FAKLER, ESQ., Of
               Counsel), New York, New York for Defendants.


## <u>INTRODUCTION</u>

        This is an action for contribution and/or indemnification.  Plaintiff Playwell Toys, Inc.,

a corporation licensed and doing business in New York, manufactured a toy xylophone

which was sold by plaintiff K-Mart,  a Michigan corporation, at a retail outlet in the State of

Nebraska.  The toy was purchased for use in a day care center in that state, and an infant

in Nebraska was seriously injured when she swallowed part of the toy.  A Nebraska tort

action, *Mulford v. Rhyme and Reason Community Child Care, Inc.,* was brought by the

infant's parents against Playwell, K-Mart and others, and was settled by the parties for

$2 million.  Defendants in this case were not defendants in the Nebraska case.

Plaintiffs now seek contribution and/or indemnification from defendants who are alleged to have tested the toy in question for safety and age appropriateness.  Defendant Bureau Veritas Consumer Products Services, Inc. ("BVCPS") is a Massachusetts corporation licensed to do business in New York.  Bureau Veritas Consumer Products Services (Hong Kong) Ltd. ("BVHK") is a foreign corporation located in Hong Kong. BVCPS has  moved to dismiss the action pursuant to Rule 12(c), and plaintiffs have cross-moved for leave to amend the complaint.

## BACKGROUND

Plaintiffs originally brought this action in New York State Supreme Court, Erie County, on August 19, 2003.  It was removed to this court on September 18, 2003 (Item 1). In their complaint, plaintiffs allege that defendants are engaged in the business of testing toys to ensure their compliance with safety standards.  Plaintiffs also allege that BVCPS is the parent company of BVHK, and that the two companies "held themselves out as a single global entity headquartered in Buffalo, New York."  Complaint, ¶ 5.  Plaintiffs allege that BVHK, acting as the "agent, department, alter-ego, and/or instrumentality" of BVCPS, tested the toy in question and determined that the toy was safe and appropriate for children six months of age and older.  Complaint, ¶ 11.  On or about August 20, 1997, Lindsay Mulford, a seven-month old infant in the care of the Rhyme and Reason Day Care Center in Kearney, Nebraska, swallowed a part of the toy and suffered serious and permanent injuries. Complaint, ¶ 13.  The child's parents brought suit against the day care center, the hospital which operated the day care center, Playwell Toys and two related entities, and

K-Mart.  The insurer for the Playwell entities and K-Mart settled the suit with the infant's parents for approximately $2 million.  Complaint, ¶ 15.

In this action, plaintiffs Playwell and K-Mart allege that they relied on the defendants' representations of safety and age appropriateness of the toy.  They have pleaded three causes of action:  (1) contribution "in accordance with article 14" of the New York Civil Practice Law and Rules ("CPLR"); (2) common law indemnification; and (3) contractual indemnification.

BVCPS filed its answer on October 8, 2003 (Item 6).[1]  Following preliminary discovery, on November 9, 2004, BVCPS filed this motion to dismiss (Item 16).  It argues that: (1) plaintiffs have alleged no negligence against BVCPS and that their allegations are insufficient to pierce the corporate veil; (2)  Article 14 of the New York Civil Practice Law & Rules and section 15-108 of the New York General Obligations Law  bar contribution claims by settling tortfeasors; (3) plaintiffs' contractual indemnity claim is insufficient because it sets forth no contractual provisions for indemnification between plaintiffs and BVCPS; and (4) the common law indemnity claim must fail because Playwell and K-Mart were alleged to have been actively negligent, not merely vicariously liable, in the underlying suit.

On February 11, 2005, plaintiffs filed their response to the motion to dismiss and a cross-motion for leave to amend the complaint to add the French parent company of BVCPS and BVHK (Item 24).  In response to the motion to dismiss, plaintiffs argued that Nebraska law should apply to this action, and that Nebraska law does not bar contribution

---

[1]  While it appears that BVHK was served with the summons and complaint (Item 9), it has not filed an answer or joined in the motion to dismiss.

claims by settling tortfeasors.  They also claim that they were merely passively negligent, in that they relied on the testing of the toy by defendants.  Plaintiffs assert that they need additional discovery to determine the applicable contractual provisions in support of their contractual indemnity claim.  Finally, plaintiffs contend that they have sufficiently alleged facts to pierce the corporate veil.

Defendant BVCPS filed a reply in support of its motion to dismiss and a response to the cross-motion on May 26, 2005 (Item 31).  Plaintiffs filed a sur-reply in opposition to the motion and a reply in support of their cross-motion on June 17, 2005 (Item 35).  Following receipt of these submissions, the court requested further briefing.  The parties filed their supplemental briefs on October 31, 2005 (Items 39, 42).  Oral argument was heard on December 12, 2005.  The parties then submitted letter briefs on December 23, 2005 (Items 44, 45).  Unsuccessful settlement negotiations followed.  For the reasons that follow, the defendant's motion to dismiss is granted in part, and plaintiffs' cross-motion to amend is granted.

## DISCUSSION

### I. Choice of Law

In a case such as this, in which jurisdiction is based on diversity of citizenship, a federal court sitting in New York State must apply New York's choice of law rules.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941);  *Alderman v. Pan Am World Airways*, 169 F.3d 99, 103 ( 2d Cir. 1999).  Under New York law, the relevant analytical approach to choice of law issues is the "interest analysis."  *See Schultz v. Boy Scouts of Am.*, 480 N.E.2d 679 (N.Y. 1985).  Pursuant to the interest analysis, "the law of the

jurisdiction having the greatest interest in the litigation will be applied and . . . the facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict." *Miller v. Miller*, 237 N.E.2d 877, 879 (N.Y. 1968); *Neumeier v. Kuehner*, 286 N.E.2d 454, 457 (N.Y. 1972). Under this formulation, the significant contacts are the parties' domiciles and the site of the tort. *See Schultz*, 480 N.E.2d at 684. However, other significant contacts to consider are the state where the conduct causing the injury occurred and the state where the relationship between the parties is centered. *Van Dyke v. Columbia Mach., Inc.*, 246 F. Supp. 2d 191, 193 (W.D.N.Y. 2003).

In *Schultz v. Boy Scouts of Am.*, 480 N.E.2d 679, and *Cooney v. Osgood Mach., Inc.*, 612 N.E.2d 277 (N.Y. 1993), the New York Court of Appeals recognized a distinction between

> laws that regulate primary conduct (such as standards of care) and those that allocate losses after the tort occurs (such as vicarious liability rules). If conflicting conduct-regulating laws are at issue, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders. But if competing "postevent remedial rules" are at stake other factors are taken into consideration, chiefly the parties' domiciles.

*Cooney*, 612 N.E.2d at 280; *see also Schultz*, 480 N.E.2d at 684-85.

Here, the law at issue relates to loss allocation. *Cooney,* 612 N.E.2d at 282 ("Contribution rules–as involved in the present case–are loss allocating, not conduct regulating."). The choice of law principles relating to a loss allocating rule were articulated by the Court of Appeals in *Neumeier,* 286 N.E.2d at 457-58. The Court of Appeals considered a conflict of laws among guest statutes (also considered loss allocating rules), and fashioned three rules to apply to cases in which loss allocating rules were in conflict.

5

The appropriate rule depends on the specific facts of the case and the respective domiciles of the parties.

The first *Neumeier* rule provides that "[w]here the conflicting rules at issue are loss allocating and the parties to the lawsuit share a common domicile, the loss allocation rule of the common domicile will apply." *Padula v. Lilarn Props. Corp.*, 644 N.E.2d 1001, 1003 (N.Y. 1994); *Neumeier,* 286 N.E.2d at 457. "The second *Neumeier* rule addresses 'true' conflicts, where the parties are domiciled in different States and the local law favors the respective domiciliary . . . .  In essence, then, the second *Neumeier* rule adopts a 'place of injury' test . . . ."  *Cooney*, 612 N.E.2d at 281; *see Neumeier*, 286 N.E.2d at 457-58.

In a "split-domicile case," where the parties are domiciled in different states and the accident occurred in yet another state, the third *Neumeier* rule applies.  *Cooney*, 612 N.E.2d at 281. That rule provides:

> Normally, the applicable rule of decision will be that of the state where the accident occurred but not if it can be shown that displacing that normally applicable rule will advance the relevant substantive law purposes without impairing the smooth working of the multi-state system or producing great uncertainty for litigants.

*Neumeier*, 286 N.E.2d at 458.

The domicile of a corporation for choice of law purposes is the state where it maintains its principal place of business.  *Dorsey v. Yantambwe,* 715 N.Y.S.2d 566, 570 (App. Div. 2000), *lv. denied,* 754 N.E.2d 199 (N.Y. 2001).  Based on the allegations in the complaint and defendant's Answer and Notice of Removal, the court concludes that Playwell is a New York corporation with its principal place of business in California, K-Mart is a Michigan corporation with its principal place of business in Michigan, BVCPS is a

Massachusetts corporation with its principal place of business in Massachusetts, and BVHK is a Hong Kong corporation (Item 1, ¶¶ 3 - 6; Item 6).[2]  As this is a so-called "split-domicile" case, the third *Neumeier* rule would normally dictate the application of the law of the place of the injury.  For choice of law purposes, the parties agree that the place of injury is Nebraska.

Defendant argues that the law of the forum should be applied, as plaintiffs chose to bring the action in New York and have thus consented to its application.  Additionally, BVCPS asserts New York law should be applied as both it and Playwell are domiciled in New York and the law of Michigan and New York regarding contribution actions by settling tortfeasors is not in conflict.  Finally, defendant argues that application of Nebraska law will not advance the relevant substantive law purposes without impairing the smooth working of the multi-state system or producing great uncertainty for litigants, and that New York law should apply.

Although plaintiffs brought this action in New York State and cited to New York law in the complaint, the court finds that plaintiffs have not consented to the application of New York law.  In response to the motion to dismiss, plaintiffs have forcefully argued that the substantive law of Nebraska should be applied to this dispute.  *Cf. Zoll v. Jordache Enter., Inc.*, 2002 WL 31873461, *5 (S.D.N.Y. Dec. 24, 2002) (plaintiff's citation to New York law in her amended complaint, exclusive citation to and reliance upon New York law in her

---

[2]   BVCPS has submitted a document from the California Secretary of State indicating that Playwell had forfeited its corporate powers, rights and privileges in the State of California as of June 16, 1998 .  In response, plaintiffs state that Playwell was headquartered in California while it was operational. The court finds that at the time of the underlying tort in 1997, Playwell was a California domiciliary.  The forfeiture of corporate powers in California, with no proof of a later domicile, provides no other jurisdiction with a greater interest in the action.  *See Schultz v. Boy Scouts of Am., Inc.,* 480 N.E.2d 679, 682 (N.Y. 1985).

subsequent submissions to the court, and declination to contest the choice of law argument put forth by defendants was deemed to constitute an implied consent to application of New York law).  In reviewing the Answer and Notice of Removal, the court determines that the parties are domiciled in different states and the injury occurred in yet another jurisdiction.  This is a split domicile case that is governed by the third *Neumeier* rule, which generally dictates that the law of the place of the injury is applied in the case.[3]  Here, that is the law of the state of Nebraska.

Defendant argues, however, that application of the law of Nebraska will not advance the relevant substantive law purposes without impairing the smooth working of the multi-state system or producing great uncertainty for litigants.  Defendant seeks to have the court apply New York law which would preclude plaintiffs' claim for contribution by settling tortfeasors.  Plaintiffs state that they were unable to implead these defendants in the Nebraska action for lack of personal jurisdiction and that the application of New York law renders defendants unanswerable in either New York or Nebraska (Item 35, pp. 11-12).  The laws of all involved jurisdictions seek to encourage settlement and equitably allocate liability among tort-feasors.  *See Miller v. Riverwood Recreation Ctr., Inc.,* 546 N.W.2d 684, 688 (Mich. Ct. App. 1996), *app. denied,* 558 N.W.2d 725 (Mich. 1997); *KAOM, Inc. v. Superior Court,* 41 Cal. Rptr.2d 310, 313 (Cal. Ct. App. 1995); *Didner v. Keene,* 593 N.Y.S..2d 238, 244 (App. Div.), *aff'd,* 624 N.E.2d 979 (N.Y. 1993);  *Royal Indem. Co. v. Aetna Cas. & Sur. Co.,* 229 N.W.2d 183, 189-90 (Neb. 1975).  However, the

---

[3] Defendant argues that New York law should be applied under the second *Neumeier* rule as the laws of Michigan and New York are not in conflict.  The second *Neumeier* rule addresses those situations in which the parties are domiciled in different states and the injury occurred in one of those states.  This case is not governed by the second *Neumeier* rule, but by the third.

laws of Nebraska and New York are in conflict, as New York prohibits contribution under these circumstances and Nebraska would appear to allow it.  The application of New York law in this instance does not advance the substantive law purpose of encouraging settlement or equitable allocation of liability as it insulates defendants from liability. Additionally, New York is merely the forum state.  The named corporate defendants appear to be doing business in New York, but none is domiciled in New York.  New York would have little interest in applying its loss allocating rules to a dispute among non-domiciliaries that arises as a result of a Nebraska tort.   Under the *Neumeier* rules, the locus of the tort is the neutral tiebreaker when the law of various jurisdictions conflict. Accordingly, the court finds that application of Nebraska law will neither impair the workings of the multi-state system nor produce great uncertainty for litigants.

Finally, defendant argues that this court cannot apply the law of Nebraska to this action consistent with constitutional due process requirements because defendant is not subject to personal jurisdiction in Nebraska.  When a dispute implicates the interests of two or more states, application of each state's law must be consistent with the Full Faith and Credit and Due Process Clauses of the Constitution.  *See Cooney*, 612 N.E.2d at 279; *Diehl v. Ogorewac*, 836 F. Supp. 88, 91 (E.D.N.Y.1993).  These modest constitutional requirements are met if each state whose law is sought to be applied has "significant contacts or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair."  *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 313 (1981); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 818-23 (1985). However, the choice of law and jurisdiction inquiries are distinct, *see Allstate,* 449 U.S. at

320 n.3 (Stevens, concurring), and defendants acknowledge the possible situation in which the application of a state's law would not offend due process even though the defendant would not be subject to personal jurisdiction in that state (Item 45, p. 3).

This same issue was raised in *Esco Fasteners Co. v. Korea Hinomoto Co., Ltd.,* 928 F. Supp. 252 (E.D.N.Y. 1996).  In that case, an allegedly defective bolt was used in a set of crutches, and snapped while the crutches were in use, causing injuries to a Connecticut resident.  In an action filed in Connecticut Superior Court, the manufacturer of the crutches and the supplier of the bolt sought to implead the Korean manufacturer of the bolt.  The manufacturer of the bolt, Korea Hinomoto, moved to dismiss for lack of personal jurisdiction, and the motion was granted.  The manufacturer of the crutches and supplier of the bolt then settled the action with the injured plaintiff.  Thereafter, they brought an action for contribution and indemnification in New York against Korea Hinomoto.  Korea Hinomoto argued that the New York court could not apply the law of Connecticut because it was not subject to personal jurisdiction in Connecticut.  The court found that a lack of personal jurisdiction over the Korean defendant in Connecticut did not prevent a New York court from applying Connecticut law, as the Korean defendant was subject to personal jurisdiction in New York, the forum state.  Under the third *Neumeier* rule, the court applied the substantive law of Connecticut.  It found that the plaintiffs could reasonably expect, when settling the action in Connecticut, that the law of Connecticut would govern the issues of contribution and indemnity, while Korea Hinomoto could have no reasonable expectation that the law of New York would have any relevance to the case, every significant aspect of which occurred in Connecticut.  *Esco Fasteners,* 928 F. Supp. at 256.

Similarly, in *Cooney,* 612 N.E.2d 277 (N.Y. 1993), a Missouri resident was injured in Missouri by a piece of machinery sold by a New York sales agent.  The Missouri resident brought a products liability action in New York against the sales agent, which in turn brought a third-party action against the plaintiff's Missouri employer, the successor-in-interest to the manufacturer of the machinery and the New York company which first owned the metal-bending machine.  The New York Court of Appeals applied the law of Missouri under the third *Neumeier* rule, after determining that it could apply New York choice of law principles consistent with the United States Constitution.  The court recognized that Osgood, the sales agent, had done "nothing to affiliate itself with Missouri." *Cooney,* 612 N.E.2d at 283.  "[A] decade after Osgood's last contact with the bending roll, the machine wound up in Missouri through no effort, or even knowledge, of Osgood." *Id.* Additionally, the record established that Osgood limited its business activities to New York and parts of Pennsylvania, was not in the business of distributing goods on a nationwide basis, and its contact with the bending roll took place in 1958, some 14 years before the concept of contribution was introduced into New York law. *Cooney,* 612 N.E.2d at 283-84. Despite the scarcity of contact with Missouri, the court applied Missouri law under the third *Neumeier* rule.  The accident occurred in Missouri, Missouri law shields employers from contribution claims, and Osgood could have had no expectation of contribution at the time of its contact with the machine.  Thus, the court found that application of Missouri law more closely comported with the reasonable expectations of the parties. *Id.*

In this case, the named defendants are international companies which  contracted with plaintiffs to test a toy that would be marketed through a national retailer.  Although the

named defendants may not have been subject to personal jurisdiction in Nebraska, they could have reasonably expected that their actions would have implications in any jurisdiction, including Nebraska.   Having determined that defendants are subject to personal jurisdiction New York, the New York choice of law rules dictate in split-domicile cases that the law of the place of the injury should apply.   As between New York and Nebraska, the reasonable expectations of the parties more closely comport with application of Nebraska law.   The injury, the underlying tort action, and the settlement all took place in Nebraska.   Plaintiffs cannot be accused of "forum shopping," as the choice of a New York forum precludes a contribution action by settling tortfeasors.   Finally, none of the parties are New York domiciliaries.   There are significant contacts with Nebraska such that the application of Nebraska law is neither arbitrary nor fundamentally unfair.   Accordingly, the court determines that application of the law of Nebraska is consistent with the *Neumeier* rules and the Due Process Clause of the Constitution.

## II.  Contribution

It appears that under Nebraska law, unlike New York law, there is no absolute bar to a contribution claim by a settling tortfeasor.   The Nebraska Supreme Court recognized claims for contribution among negligent joint tortfeasors in *Royal Indem. Co. v. Aetna Cas. & Sur. Co.*, 229 N.W.2d 183 (Neb. 1975). In that case, the court held that:

> in this jurisdiction there is no absolute bar to contribution among negligent joint tort-feasors; and also, as in this case, that a right to equitable contribution exists among judgment debtors jointly liable in tort for damages negligently caused, which right becomes enforceable on behalf of any party when he [or she] discharges more than his [or her] proportionate share of the judgment.

12

*Id.* at 190.

Although in *Royal Indem. Co.* the Nebraska Supreme Court did not directly rule as to contribution between negligent tortfeasors against whom judgments have not yet been rendered, a federal district court applying the principle that it believed the Nebraska Supreme Court would utilize in such a case in the future, stated that the language in *Royal Ind. Co.* "encompass[ed] both those against whom a plaintiff has successfully obtained a judgment and those whose liability remains to be fixed . . . ." *Reese v. AMF-Whitely*, 420 F. Supp. 985, 987 (D.Neb.1976); *see also Northland Ins. Co. v. State,* 492 N.W.2d 866, 869 (Neb. 1992). In *Markvicka v. Brodhead-Garrett Co.*, 76 F.R.D. 205, 207 (D.Neb.1977), the court found:

> the statement that "there is no absolute bar to contribution among negligent joint tortfeasors" would seem to envision contribution not only among those against whom a plaintiff has successfully obtained judgments but also among those whose liability remains to be fixed either in a third-party claim in the original plaintiff's suit or in an independent action for contribution by the original defendant.

Defendant has argued that none of the Nebraska cases cited by plaintiffs  address the exact facts of this case, in that these named defendants were not a party to the settlement, were not named in the underlying lawsuit, and were not given the opportunity to participate in the defense of the underlying action.  BVCPS argues that as Nebraska has not addressed these precise issues, there is no reason to believe that Nebraska law would differ from New York law.  This argument is premature.  Accepting the truth of plaintiffs' allegations, the court finds that plaintiffs have, at the very least, pleaded a claim for contribution.  Accordingly, applying Nebraska law, the motion to dismiss the contribution claim is denied.

### III. Contractual Indemnification

With respect to the contractual indemnification claim, defendant argues that plaintiffs have failed to allege any contractual obligations giving rise to indemnification. Plaintiffs concede that their claim is one for implied contractual indemnification, and they need additional discovery to develop the facts of the claim.

Nebraska law recognizes a claim of implied contractual indemnification, but only in cases where there is a "special relationship" between the proposed indemnitee and indemnitor, such as principle and agent, bailor and bailee, lessor and lessee, or a situation giving rise to vicarious liability. *See Harsh Intern., Inc. v. Monfort Indus., Inc.*, 662 N.W.2d 574, 580 (Neb. 2003). Plaintiffs have alleged no special relationship with defendant that would give rise to a claim for implied indemnification under Nebraska law, and have failed to state such a claim under Nebraska law.

Similarly, New York law recognizes implied indemnification in two situations: (1) "implied contractual" indemnity, in which the law implies a right to indemnity because of the special nature of the contractual relationship between the parties, *see, e.g., In re Poling Transp. Corp.,* 784 F. Supp. 1045, 1048 (S.D.N.Y.1992), and (2) "implied in law" indemnity, in which one tortfeasor is held liable "solely on account of the negligence of another." *Poling Transp*., 784 F.Supp at 1049. The implied contract theory of indemnification applies when the proposed indemnitee holds a non-delegable duty to a third party, but transfers this responsibility to the proposed indemnitor by implied agreement. *Poling*, 784 F. Supp. at 1048. Generally, in order for there to be an implied contractual duty of indemnity, there must have been an agreement between the proposed indemnitee and the proposed

14

indemnitor into which the right to indemnity is implied. *Id.* No right to implied indemnification exists, however, when the proposed indemnitee retains responsibility for a duty it owes directly to the third party. *Id.* Indemnification under New York law, whether categorized as implied or equitable, is not available where the party seeking indemnification was "partially at fault" or "responsible to any degree." *Monaghan v. SZS 33 Assoc., L.P.*, 73 F.3d 1276, 1284 (2d Cir. 1996) (holding that indemnification is not available under New York law to party who is itself partially at fault or is alleged to have himself violated the same duty to the underlying plaintiff); *Rosada v. Proctor & Schwartz, Inc.*, 484 N.E.2d 1354, 1357 (N.Y. 1985) (holding that a party seeking indemnification may not be held responsible to any degree). Here, plaintiffs have pleaded no facts to suggest that they transferred a non-delegable duty to a third party by implied agreement. Moreover, plaintiffs retained responsibility for a duty they owed directly to the third party in the Nebraska tort action. Accordingly, plaintiffs have failed to state a claim for implied indemnification under New York law.

In determining a motion under Fed. R. Civ. P. 12(b)(6), a district court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (1999), *cert. denied,* 531 U.S. 1052 (2000). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1969 (2007); *see also Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) ("When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited

one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims").  As plaintiffs have set forth no facts which would entitle them to relief under New York or Nebraska law on a theory of implied indemnification, the claim for implied contractual indemnification must be dismissed.

## IV.  Common Law Indemnification

Plaintiffs argue that they have properly alleged a common law indemnification claim because they were not actively negligent in the underlying tort action in Nebraska.  Under New York law, the common law right to indemnification "arises when one party is compelled to pay for the wrong of another."  *Twitchell v. Town of Pittsford*, 483 N.Y.S.2d 524 (App. Div. 1984), *aff'd,* 489 N.E.2d 250 (N.Y. 1985).  Accordingly, the common law right to indemnification arises only where a party's liability is based upon the wrongdoing of the party from whom indemnification is sought.  *See Guzman v. Haven Plaza Hous. Dev. Fund Co.*, 509 N.E.2d 51 (N.Y. 1987).  However, where a party has "'itself participated to some degree in the wrongdoing [it] cannot receive the benefit of the [common law indemnity] doctrine'" but rather it may only receive contribution.  *Durabla Mfg. Co. v. Goodyear Tire and Rubber Co.*, 992 F. Supp. 657, 660 (S.D.N.Y. 1998) (quoting *Trustees of Columbia Univ. v. Mitchell/Giurgola Assocs.*, 492 N.Y.S.2d 371, 375 (App. Div. 1985)); *see also Ins. Co. of North America v. Historic Cohoes II*, 879 F. Supp. 222, 228 (N.D.N.Y. 1995) (holding that if the party seeking indemnity is held liable in part because of its own negligence, common law indemnification is unavailable and the only remedy is contribution).

Nebraska law is in accord with New York law. Under Nebraska law, indemnification is available when one party is compelled to pay money which in justice another ought to pay, or has agreed to pay, unless the party making the payment is barred by the wrongful nature of his conduct. *Hiway 20 Terminal, Inc. v. Tri-County Agri-Supply, Inc.,* 443 N.W.2d 872, 876 (Neb. 1989). Indemnification is distinguishable from the closely related remedy of contribution, in that the latter involves a sharing of the loss between parties jointly liable. *Strong v. Nebraska Natural Gas Co.,* 476 F. Supp. 1170 (D. Neb. 1979). "It is generally recognized that the party seeking indemnification must have been free of any wrongdoing, and its liability is vicariously imposed." *City of Wood River v. Geer-Melkus Constr. Co.,* 444 N.W.2d 305, 311 (Neb. 1989). In the tort context, courts have held that indemnity is available to one who engaged in merely passive neglect, but unavailable to one who engaged in direct and active negligence. *Hiway 20 Terminal, Inc.,* 443 N.W.2d at 876. Under Nebraska law, noncontractual indemnity will be denied where a tortfeasor's conduct was actively or affirmatively negligent, or where the tortfeasor's liability is based on actual wrongdoing as opposed to constructive or technical fault. *Danny's Constr. Co. v. Havens Steel Co.,* 437 F. Supp. 91, 93 (D. Neb. 1977). In *Danny's*, the Court identified those situations where noncontractual indemnity might apply.

> Noncontractual indemnity applies to situations in which a person discharges a liability which has been imposed on him as a matter of law, but which, because of another's actual fault, should have been discharged by the other. See Restatement of Restitution § 76 (1937). A defendant whose liability to the plaintiff is constructive, vicarious or derivative, for example by virtue of the doctrine of respondeat superior, or because of some legal relationship with the plaintiff such as bailor/bailee, or by virtue of a nondelegable duty to the plaintiff imposed by statute or rule of law, may shift the entire burden of a judgment against him to a third party whose actual fault caused the plaintiff's injury.

17

*Danny's Constr. Co. v. Havens Steel Co.*, 437 F. Supp. at 93.

On a motion to dismiss, the court may consider documents that are referred to in, and integral to, the complaint. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir. 2002) (noting that for the purposes of a motion to dismiss, a complaint is considered to include documents referred to therein); *see also Int'l Audiotext Network, Inc. v. AT & T,* 62 F.3d 69, 72 (2d Cir. 1995) ("Although the amended complaint in this case does not incorporate the Agreement, it relies heavily upon its terms and effect; therefore, the Agreement is 'integral' to the complaint, and we consider its terms in deciding whether [plaintiff] can prove any set of facts that would entitle to it relief."). In their complaint, plaintiffs refer to the Nebraska action brought by the parents of the injured infant, and the settlement of that action is the basis for this action for contribution and indemnification. Defendant has attached a copy of the petition in the Nebraska case to an affirmation in support of the motion to dismiss. Item 17, Exh. B. Accordingly, the court may consider the complaint in the Nebraska action in its determination of the motion to dismiss.

In the Nebraska action, Playwell and K-Mart were accused of negligence, failure to warn, breach of warranty (K-Mart), and strict products liability (Playwell). They are alleged to have manufactured, supplied, packaged, marketed, and sold the toy in question (Item 17, Exh. B, ¶¶ 66, 67, 73, 74, 80, 81, 83, 89, 90), and to have failed to use reasonable care to ensure that the toy was safe and failed to adequately warn of potential choking hazards. Plaintiffs admitted in the complaint in this action that they "manufactured and/or marketed" and "placed the toy xylophone and mallet into the stream of commerce and marketed it for children 'six months and over.'" Item 1, Exh. A, ¶¶ 9, 12. Plaintiffs then settled the Nebraska lawsuit for $2 million. Item 1, Exh. A, ¶ 15. While plaintiffs have alleged that

18

defendant's "negligence and culpable conduct was the sole proximate cause of" the Nebraska infant's injuries, Item 1, Exh. A, ¶¶ 23, 26, the complaint in the Nebraska action indicates that plaintiffs' liability as manufacturer and distributor of the toy was not merely vicarious. *See Rosado v. Proctor & Schwartz, Inc.,* 483 N.Y.S.2d 271, 273 (App.Div. 1984) (strict products liability is not passive or vicarious liability), *aff'd,* 484 N.E.2d 1354 (N.Y. 1985); *Durabla Mfg. Co. v. Goodyear Tire and Rubber Co.,* 992 F. Supp.657, 660 (S.D.N.Y. 1998) ("there is nothing passive about the role of a distributor of a defective or hazardous product").   Accordingly, plaintiffs' common law indemnification claim, under either New York or Nebraska law, must be dismissed.

## V.  Piercing the Corporate Veil

BVCPS also argues that plaintiffs have failed to allege any actionable conduct on its part and have failed to allege facts sufficient to pierce the corporate veil.  Under New York law, "[g]enerally, parent and subsidiary corporations are treated as separate legal entities, and a contract by one does not legally bind the other." *Maltz v. Union Carbide Chem. & Plastics Co., Inc.*, 992 F. Supp. 286, 300 (S.D.N.Y. 1998).  Likewise, "[u]nder New York law, 'a parent company is not automatically liable for the acts of its wholly-owned subsidiary.'" *Degraziano v. Verizon Communications., Inc.*, 325 F. Supp. 2d 238, 245 (E.D.N.Y. 2004) (quoting *Manchester Equip. Co. v. Amer. Way and Moving Co.*, 60 F. Supp. 2d 3, 6 (E.D.N.Y. 1999).  To pierce the corporate veil, the plaintiff must generally show two things: "'(1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury.'" *Astroworks, Inc. v.*

*Astroexhibit, Inc.*, 257 F. Supp. 2d 609, 614 n.8 (S.D.N.Y. 2003) (quoting *Morris v. New York State Dep't of Taxation and Fin.*, 623 N.E.2d 1157, 1160 (N.Y. 1993)). Purely conclusory allegations cannot suffice to state a claim based on veil-piercing or alter-ego liability, even under Rule 8(a)'s liberal notice pleading standard. *In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 426 (S.D.N.Y. 2003); *see also DeJesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir.), *cert. denied,* 519 U.S. 1007 (1996) (dismissing alter-ego claim where complaint was 'devoid of *any* specific facts or circumstances supporting' plaintiff's conclusory allegations concerning defendant's domination of its subsidiary). To avoid dismissal, a party seeking to pierce the corporate veil must present factual allegations concerning both elements of the doctrine. *EED Holdings v. Palmer Johnson Acquisition Corp.*, 228 F.R.D. 508, 512 (S.D.N.Y. 2005).

Defendant states that Nebraska law is in accord with New York law on the issue of piercing the corporate veil, and that plaintiffs have failed to allege any facts that would satisfy the applicable standard. Under Nebraska law, to pierce the corporate veil between a parent and a subsidiary, a plaintiff must show more than the mere sharing of services between the two corporations. The plaintiff must show that the parent corporation totally dominated the subsidiary corporation to such extent that the subsidiary had no separate corporate existence and functioned solely to achieve the purposes of the dominant corporation. *See Global Credit Services, Inc. v. AMISUB (Saint Joseph Hosp.), Inc.,* 508 N.W.2d 836, 842 (Neb. 1993).

It is well settled that in determining a motion under Fed. R. Civ. P. 12(b)(6), a district court must accept the allegations contained in the complaint as true and draw all

reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (1999), *cert. denied,* 531 U.S. 1052 (2000). While the court must accept as true a plaintiff's factual allegations, "[c]onclusory allegations of the legal status of the defendants' acts need not be accepted as true for the purposes of ruling on a motion to dismiss." *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995) (citing *In re American Express Co. Shareholder Litig.*, 39 F.3d 395, 400-01 n.3 (2d Cir. 1994)).  While a complaint attacked by a Rule 12(b)(6) motion to dismiss need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1964-65 (2007); *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

Here, plaintiffs allege that BVHK tested the toy in question and approved it for use by children six months of age and older.  They allege that both BVCPS and BVHK owed a duty of care to plaintiffs to ensure that the toy was appropriate for the ages for which it was approved.  Plaintiffs do not allege that BVCPS itself tested the toy, but that BVCPS and BVHK "held themselves out as a single global entity," that BVCPS is the parent company of BVHK, and that BVHK is an "agent, department, alter-ego, and/or instrumentality" of BVCPS.  Complaint, Item 1, ¶¶ 5-7, 10.

Plaintiffs contend that further discovery is needed to accurately determine the corporate relationship between the named defendants.  Under either the law of New York or Nebraska, the allegations in the complaint as pleaded are conclusory and insufficient

to pierce the corporate veil and impose liability on BVCPS.   However, as only minimal discovery has been conducted, the court will allow plaintiffs an opportunity to amend the complaint and replead the remaining cause of action consistent with the requirements of Fed. R. Civ. P. 8(a).

## VI.  Motion to Amend

Finally, plaintiffs seek permission to amend the complaint and add the French parent company of BVCPS and BVHK.   Under Rule 15(a) of the Federal Rules of Civil Procedure, once the time for amending a pleading as of right has expired, a party may request leave of the court to amend, which "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a).

> In the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -the leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962).  Plaintiffs filed the motion to amend early in the litigation and before the completion of discovery.   Defendant has not shown that it will suffer undue prejudice by the amendment or that such an amendment will be futile. Accordingly, plaintiffs' motion to amend the complaint is granted.

## <u>CONCLUSION</u>

Applying the law of the State of Nebraska, the defendant's motion to dismiss the contribution claim is denied.  Applying the law of either Nebraska or New York, the motion to dismiss the implied contractual and common law indemnification claims is granted.

Plaintiff's motion to amend the complaint to add a defendant is granted, and plaintiffs are directed to replead the contribution claim consistent with Fed. R. Civ. P. 8(a).  The court will conduct a telephone conference on Wednesday, November 7, 2007, at 10:15 a.m. to establish a discovery schedule and a deadline for the filing of an amended complaint.

So ordered.

_____\s\ John T. Curtin
JOHN T. CURTIN
    United States District Judge

Dated: September 28, 2007
p:\opinions\03-704.sept2607