UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

PLAYWELL TOY, INC., and
KMART CORPORATION,

                              Plaintiff,

        -vs-                                                    03-CV-0704C(SC)

BUREAU VERITAS CONSUMER PRODUCTS
SERVICES, INC., (F/K/A ACTS TESTING LABS, INC.),
and BUREAU VERITAS CONSUMER PRODUCTS
SERVICES (HONG KONG) LTD. (F/K/A ACTS TESTING
LABS (H.K.) LTD.),

                              Defendants.

_____


APPEARANCES:    DAMON & MOREY LLP (SHERI L. MOONEY, ESQ., OF COUNSEL),
                Buffalo, New York for Plaintiffs.

                THELEN REID & PRIEST, LLP (PAUL M. FAKLER, ESQ., OF
                COUNSEL), New York, New York for Defendants BVCPS and BVHK.

                HUGHES HUBBARD & REED LLP (SARAH A. BINDER, ESQ., OF
                COUNSEL), New York, New York for Defendant BVSA.


## INTRODUCTION

This is an action for contribution.  Plaintiff Playwell Toys, Inc., a corporation licensed

and doing business in New York, manufactured a toy xylophone which was sold by plaintiff

K-Mart, a Michigan corporation, at a retail outlet in the State of Nebraska.  The toy was

purchased for use in a day care center in that state, and an infant in Nebraska was

seriously injured when she swallowed part of the toy.  A Nebraska tort action, *Mulford v.*

*Rhyme and Reason Community Child Care, Inc.,* was brought by the infant's parents

against Playwell, K-Mart, and others, and was settled by the parties for $2 million. Defendants in this case were not defendants in the Nebraska case.

Plaintiffs now seek contribution from defendants who are alleged to have tested the toy in question for safety and age-appropriateness. Defendant Bureau Veritas Consumer Products Services, Inc. ("BVCPS"), formerly known as ACTS Testing Labs, Inc., is a Massachusetts corporation licensed to do business in New York. Bureau Veritas Consumer Products Services (Hong Kong) Ltd. ("BVHK"), formerly known as ACTS Testing Labs (H.K.), Ltd., is a foreign corporation located in Hong Kong. Following a successful motion to amend, plaintiff has added defendant Bureau Veritas SA ("BVSA"), a foreign corporation authorized to do business in New York. It is alleged that BVCPS and BVHK are "wholly owned subsidiaries" of BVSA. Item 53, ¶ 7.

## BACKGROUND and FACTS

Plaintiffs originally brought this action in New York State Supreme Court, Erie County, on August 19, 2003. It was removed to this court on September 18, 2003. Item 1. In their amended complaint, plaintiffs allege that defendants "held themselves out as a single global entity headquartered in Buffalo, New York" (Item 53, ¶ 6) and are engaged in the business of testing toys to ensure their compliance with safety standards. Item 53, ¶ 14. Plaintiffs allege that BVHK, acting as the "agent, department, alter-ego, and/or instrumentality" of BVCPS, tested the toy in question and determined that the toy was safe and appropriate for children six months of age and older. *Id.,* ¶ 17. On or about August 20, 1997, Lindsay Mulford, a seven-month-old infant in the care of the Rhyme and Reason Day Care Center in Kearney, Nebraska, swallowed a part of the toy and suffered

serious and permanent injuries.  *Id., ¶* 19.  The child's parents brought suit against the day

care center, the hospital which operated the day care center, Playwell Toys and two related

entities, and K-Mart.  The insurer for the Playwell entities and K-Mart settled the suit with

the infant's parents for approximately $2 million.  *Id., ¶* 21.

In this action, plaintiffs Playwell and K-Mart allege that they relied on the defendants'

representations of safety and age-appropriateness of the toy.  In their original complaint,

they pleaded three causes of action:  (1) contribution; (2) common law indemnification; and

(3) contractual indemnification.  Defendant BVCPS sought dismissal of the complaint

pursuant to Fed. R. Civ. P. 12(b)(6).  Item 16.  Following unsuccessful settlement

negotiations, this court granted the motion in part, dismissing the indemnification clams

and, applying the law of the State of Nebraska, denied the motion with respect to the

contribution claim.  Item 52.  The court also granted the plaintiffs' cross-motion to amend

the complaint (Item 24), allowing them to add defendant BVSA, and directed plaintiffs to

replead the contribution claim consistent with Fed. R. Civ. P. 8(a).

Plaintiffs filed their amended complaint on November 20, 2007.  Item 53.  On

November 30, 2007, BVCPS filed a motion to dismiss the amended complaint.  Item 63.

BVSA filed a motion to dismiss on December 11, 2007.  Item 69.  In a notice filed

December 26, 2007, BVHK joined in the motion to dismiss of BVCPS.  Item 75.  On

January 11, 2008, plaintiffs filed a response to the motions.  Item 77.  Thereafter,

defendants filed replies.  Items 79, 80.  The court determined that oral argument was

unnecessary.  For the reasons that follow, the motions to dismiss are denied.

**DISCUSSION**

Defendant BVCPS has moved to dismiss the complaint on the grounds that plaintiffs have alleged no actionable conduct on the part of BVCPS and that plaintiffs' claims are time-barred.  BVSA argues that the claim against it in the amended complaint does not relate back to the original complaint and is thus time-barred.  Additionally, BVSA argues that the complaint should be dismissed because plaintiffs have failed to allege facts sufficient to pierce the corporate veil.[1]

## 1.  Liability of BVCPS and BVSA

BVCPS first argues that the claim against it must be dismissed as plaintiffs have failed to allege any actionable conduct on its part.  Likewise, BVSA argues that plaintiffs have not pleaded facts sufficient to pierce the corporate veil and establish that it should be liable for the actions of its subsidiaries. Defendants seek dismissal of plaintiff's complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

In considering a motion pursuant to Rule 12(b)(6), a court should construe the complaint liberally, "drawing all reasonable inferences in the plaintiff's favor," *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir. 2002) (citing *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001)), although mere "conclusions of law or unwarranted deductions" need not be accepted.  *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994), *cert. denied,* 513 U.S. 1079 (1995).  Indeed, conclusory allegations "will not suffice

---

[1]  In this diversity action, the court applies federal procedural law and state substantive law.  *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64 (1938).  In the court's previous order, it was determined that the substantive law of the State of Nebraska should be applied to the plaintiffs' claims.  Item 52, p. 12 .

to prevent a motion to dismiss." *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) (internal quotation omitted).  On a motion to dismiss, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims . . . ."  *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir.1995) (internal quotation omitted), *cert. denied,* 519 U.S. 808 (1996). Additionally, to survive a Rule 12(b)(6) motion to dismiss, the allegations in the complaint must meet the standard of "plausibility."  *See Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1970 (2007).  Although the complaint need not provide "detailed factual allegations," *id.* at 1964, it must "amplify a claim with some factual allegations . . . to render the claim plausible."  *Iqbal v. Hasty*, 490 F.3d 143, 157-158 (2d Cir. 2007), *cert. granted,* 128 S.Ct. 2931 (2008).  Finally, the court will generally consider only the complaint, which includes "any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."  *Chambers v. Time Warner, Inc.,* 282 F.3d at 152 (internal quotation omitted).  Moreover, "[e]ven where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint."  *Id.* at 153 (internal quotations omitted).  Thus, the court may consider the test report upon which plaintiffs' claim for contribution is based.  Item 64, Exh. 1.

Under Nebraska law, a corporation will generally "be looked upon as a separate legal entity until sufficient reason to the contrary appears . . . ." *Hayes v. Sanitary and Improvement Dist. No. 194*, 244 N.W.2d 505, 511 (Neb. 1976).  In cases where there is sufficient evidence in the record to pierce the corporate veil and dissipate the separate

legal identities, "the law has no compunction in holding a corporation liable for the acts of its owner or vice versa." *Id.* "In equity, the corporate entity may be disregarded and held to be the mere alter ego of a shareholder or shareholders in various circumstances where necessary to prevent fraud or other injustice." *United States Nat'l Bank of Omaha v. Rupe*, 296 N.W.2d 474, 477 (Neb. 1980). *See also CN Carriers, Inc. v. Wheeler Transp. Serv., Inc. (In re Application of CN Carriers, Inc.)*, 510 N.W.2d 545, 548 (Neb.Ct.App. 1993) (quoting this rule in determining subsidiary corporation was merely alter ego of parent corporation). Courts pierce the corporate veil and find two corporations to be a single unit "where one corporation is so organized and controlled and its business conducted in such a manner as to make it merely an agency, instrumentality, adjunct, or alter ego of another corporation." *Hayes,* 244 N.W.2d at 511-12. "The fiction of separate corporate identity of two corporations will not be extended to permit one of the corporations to evade its just obligations or to promote fraud or illegality or injustice." *Id.* Here, the plaintiffs have alleged that BVSA, BVCPS, and BVHK "held themselves out as a single global entity headquartered in Buffalo, New York," that BVCPS and BVHK are "wholly owned subsidiaries" of BVSA, and that the acquisition of ACTS Testing Labs, Inc. and ACTS Testing Labs (H.K.), Ltd. by BVSA constituted "a consolidation or merger of" BVSA, BVCPS, and BVHK. Item 53, ¶¶ 6, 7, 10. Finally, plaintiffs allege that the testing conducted by BVHK's predecessor was undertaken as an agent, department, alter ego, and/or instrumentality of BVCPS and BVSA. *Id., ¶* 13.

While the toy was tested by BVHKS's predecessor in Hong Kong, the test report is on letterhead that would suggest that the defendants were a single testing company with

operations in the United States, Hong Kong, France, Canada, Singapore, and Indonesia. The court is troubled by the conclusory nature of the allegations in the amended complaint and the lack of factual specificity as to dominion and control of the corporate defendants by the parent.  However, when considered with the test report, the complaint suggests an organizational nexus among the defendants.  Accepting plaintiffs' allegations as true and drawing all reasonable inferences in the plaintiffs' favor, the court finds the complaint minimally sufficient under the Federal Rules' liberal pleading standards.  Defendants' motion to dismiss, on this basis, is denied.

## 2.  Statute of Limitations

BVCPS also argues that plaintiff's claims are time-barred in that the test reports prepared by the predecessor to BVHK regarding the toy in question contain a limitation that all claims must be raised within 30 days of receipt of the report.  The report dated May 15, 1995 from ACTS Testing Labs (H.K.), Ltd., the predecessor of BVHK, to K-Mart, contains limiting language at the bottom of the page which provides:

> ACTS will generate a written Test Report for your exclusive use.  Any copying or replication of the Report to or for any other person or entity, or use of our name or trademark, is permitted only with our written permission. Our Report is limited to the test samples identified therein.  The results set forth in the Report are not necessarily indicative or representative of the statistical quality or characteristics of the lot from which a test sample was taken, or any similar or identical product unless specifically and expressly noted.  Our Report includes all of the tests requested by you and the results thereof.  You shall have thirty days from receipt of the Report to request additional testing of the samples or to notify us of any errors or omissions relating to our Report; provided, however, such notice shall be in writing and shall specifically address the issue you wish to raise.  A failure to raise such issues within the prescribed time shall constitute your unqualified acceptance of the completeness of the Report, the tests conducted and the correctness of the Report contents.

Item 64, Exh. 2. BVCPS argues that this is an enforceable limitation on the time in which to bring any claim against defendants based on the content of the test report. As plaintiffs did not complain of the "misrepresentations" contained in the testing report until years later, BVCPS contends that the contribution claim is time-barred. This argument is without merit.

This disclaiming language on the test report is not a contractual limitation on the time in which plaintiffs may raise any issue with respect to the testing of the toy. As the court reads the language, it provides plaintiffs with a 30-day window in which to review the report, request additional testing, or raise any issues as to the completeness or accuracy of the testing. While the report may have been a "correct" or "complete" transcription of the test results, the toy may nonetheless have been unsafe. If defendant's testing was in some way deficient and the toy was unsafe, plaintiffs could not be expected to raise concerns about the reliability of the testing, defendants' possible negligence, and any possible future contribution claim, within 30 days of receipt of the report. The motion to dismiss by BVCPS on this ground is denied.

Finally, BVSA argues that the claim asserted in the amended complaint does not relate back to the original complaint and the complaint should be dismissed as untimely. Under the law of the State of Nebraska, a claim for contribution is subject to a four-year statute of limitations. *See Cepel v. Smallcomb,* 628 N.W.2d 654, 660 (Neb. 2001). Here, it is undisputed that the claim accrued on March 30, 2000, the date of the settlement in the Nebraska tort action, and the original complaint in this case was filed on August 19, 2003. The motion for leave to amend was filed on February 25, 2005. Item 24. If a complaint is amended to include an additional defendant after the statute of limitations has run, the amended complaint is not time-barred if it "relates back" to a timely filed complaint. *See*

Fed. R. Civ. P. 15(c); *VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 128 (2d Cir.

2001).  Thus, unless the amended complaint relates back to the original complaint, the

claim against BVSA is untimely.

An amendment of a pleading relates back to the date of the original pleading when

the claim or defense asserted in the amended pleading arose out of the conduct,

transaction, or occurrence set forth or attempted to be set forth in the original pleading, or

the amendment changes the party or the naming of the party against whom a claim is

asserted, provided that the foregoing provision is satisfied and, within 120 days of filing the

complaint, the party to be brought in by amendment: (1) has received such notice of the

institution of the action that the party will not be prejudiced in maintaining a defense on the

merits, and (2) knew or should have known that, but for a mistake concerning the identity

of the proper party, the action would have been brought against the party.  *See* Fed. R.

Civ. P 15(c).  There are thus three requirements that must be met before an amended

complaint that names a new party can be deemed to relate back to the original timely

complaint.  First, both complaints must arise out of the same conduct, transaction, or

occurrence.  Second, the additional defendant must have been omitted from the original

complaint by mistake.  Third, the additional defendant must not be prejudiced by the delay.

*See Soto v. Brooklyn Corr. Facility*, 80 F.3d 34, 35-36 (2d Cir. 1996).

There seems to be no dispute that the original complaint and the amended

complaint arise out of the same conduct, transaction, or occurrence. Additionally, the court

finds that the plaintiffs' amended complaint meets the "mistake" requirement under

Rule 15(c)(3).  To establish "mistake" under Rule 15(c)(3), plaintiffs must show either

factual mistake, such as misnaming a party it wished to sue, or legal mistake such as

misunderstanding the legal requirements of its cause of action. *Thomas Rogers v. Sterling Foster & Co. (In re Sterling Foster & Co.),* 222 F. Supp. 2d 216, 261 (E.D.N.Y. 2002). "Mistake" under Rule 15(c)(3) is concerned primarily with the new party's awareness that failure to join it was error and not deliberate strategy, and depends on what the plaintiff knew about the identity and involvement of the added defendant when he filed the timely pleading. *In re Enron Corp*. 298 B.R. 513, 524 (Bankr.S.D.N.Y. 2003), *aff'd, Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.)*, 419 F.3d 115 (2d Cir. 2005) (citations omitted).  Here, plaintiffs were not aware of BVSA's identity at the time they filed the original complaint, and the court finds that plaintiffs' failure to name BVSA was a mistake, "that is, actual inadvertence on the part of [plaintiffs], not a conscious choice or deliberate strategy to exclude [BVSA]." *In re Enron Corp.,* 2007 WL 610404, *6 (Bankr.S.D.N.Y. February 23, 2007).

With regard to the second requirement, defendant BVSA argues that mere allegations that a parent-subsidiary relationship exists between BVSA, BVCPS, and BVHK are simply insufficient to establish that notice should be imputed to BVSA.  Notice received by the original defendant may be imputed to the new defendant if there is an identity of interest between these two parties.  Under the identity of interest exception, "the institution of an action against one party will constitute imputed notice to a party subsequently named by an amendment of the pleading when the parties are closely related in their business activities or linked in their corporate structure."  *Allbrand Appliance & Television Co. v. Caloric Corp. (In re Allbrand Appliance & Television Co.)*, 875 F.2d 1021, 1025 (2d Cir. 1989).  A "parent-subsidiary relationship standing alone is simply not enough . . . to

establish the identity of interest exception to the relation back rule." *Id*. Instead, courts have required "substantial structural and cultural identity, such as shared organizers, officers, directors, and offices . . . ." *Id.* Here, plaintiffs assert that BVSA received timely notice of the original complaint, and note that BVSA has neither admitted nor denied that it received such actual notice.

In order to determine whether BVSA received actual notice of the original complaint, or whether BVSA is so closely related to BVCPS and BVHK such as to impute notice of the original complaint to BVSA, the court must necessarily undertake a factual determination. Plaintiff has alleged that BVCPS and BVHK are "one and the same," and that the purchase of ACTS Testing Labs by BVSA "amounts to a consolidation or merger of the three companies." Item 53, ¶¶ 9, 10. It may be that BVSA is sufficiently linked with BVCPS and BVKH to impute notice of the original complaint to BVSA; the letterhead of the test report showing corporate offices in France, Hong Kong, and the United States would suggest such a nexus. Accordingly, the court finds that BVSA's motion to dismiss on this basis is denied without prejudice pending further discovery.

## CONCLUSION

The motions to dismiss are denied. The parties shall meet with the court by telephone on October 30, 2008 at 10:30 a.m. to set a further schedule. The court will initiate the call.

So ordered.

_____\s\ John T. Curtin_____
JOHN T. CURTIN
United States District Judge

Dated:   September    18 , 2008
p:\opinions\03-704.sep1008